IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAZEL GONZALEZ,

    Plaintiff,

v.

MALWAREBYTES INC.,
a Foreign Profit Corporation,

    Defendant.

CASE NO.: 8:23-cv-01043-MSS-AEP

**DEFENDANT'S UNOPPOSED MOTION TO COMPEL ARBITRATION**

Defendant, MALWAREBYTES INC., by and through its undersigned counsel, files its Unopposed Motion to Compel Arbitration and Stay Proceedings, and states as follows:

**I.   INTRODUCTION**

Plaintiff Hazel Gonzalez ("Plaintiff") filed a Complaint in the Circuit Court of the 6th Judicial Circuit in and for Pinellas County, Florida, wherein she alleges she was retaliated against in violation of the Florida Whistleblower Act (Fla. Stat. §448.102). Defendant subsequently removed the matter to this Court based on diversity jurisdiction.

As part of her employment with Malwarebytes, Plaintiff signed an offer letter, in which the Parties agreed to arbitrate any and all disputes relating to her

employment with Malwarebytes. The Court should enforce this agreement and compel the matter to arbitration. Plaintiff does not oppose the motion to compel arbitration and stay the case.

## II.     FACTUAL BACKGROUND

Plaintiff was hired by Defendant as Director, Global Recruiting, in June 2021. As part of Plaintiff's hiring, she was provided with an offer letter, on about June 22, 2021, which she signed that same day. A copy of Plaintiff's June 22, 2021 offer letter is attached hereto as Exhibit 1 (the "Agreement". As part of that offer letter, Plaintiff agreed:

> As a condition, of your employment, if any dispute arises as to your status as an at-will employee or if any other employment dispute arises between you and the Malwarebytes, the sole remedy shall be mandatory binding arbitration of the claim pursuant to the rules of the American Arbitration Association.

*Id*. Plaintiff signed the offer letter, thereby accepting the terms of the letter, and agreeing to arbitrate. Additionally, Plaintiff began her employment in or about July 2021, further evidencing her agreement to arbitrate any employment related disputes.

## III.    STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.,* 398 F.3d 1286, 1288 (11th Cir. 2005) *(quoting Moses H. Cone Mem. Hosp. v.*

*Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)); *see also Picard v. Credit Solutions, Inc.,* 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration").  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24-25.  Consequently, courts "rigorously enforce" arbitration agreements. *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir. 2004), *cert. denied*, 544 U.S. 1061 (2005).

Where a party is "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration," that party "may petition any United States District Court… for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  If the court finds (or the parties concede) a valid arbitration agreement exists and applies to the dispute at hand, and one party has failed or refused to arbitrate the dispute, the court must compel arbitration. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974) (a court should "order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate"); *see also Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84 (holding that a court may only decide "whether the parties are bound by a given arbitration clause" when determining whether or not to compel arbitration).

## IV. ARGUMENT

### A. This Action Should Be Stayed and Plaintiff Should Be Compelled to Arbitrate Her Claims Against Malwarebytes.

The strong policies favoring arbitration necessitate this Court enforce the parties' Agreement and compel Plaintiff to arbitrate her claims. The United States and Florida Supreme Courts, along with the Eleventh Circuit Court of Appeals, have repeatedly adopted a broad reading of the FAA in enforcing arbitration agreements. The Agreement between the parties in this case meets the criteria for a valid arbitration agreement, and Plaintiff's claims are directly within its scope. Accordingly, this Court should stay Plaintiff's Complaint and compel individual arbitration of her claims.

### B. The Federal Arbitration Act Requires the Court Enforce the Parties' Agreement to Arbitrate this Dispute.

The FAA was enacted by Congress "to reverse decades of judicial hostility toward arbitration agreements." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-627 (1985)); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991); *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272 (1995); *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987). The FAA establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state

substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 345 (2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)); *see also Stolt-Nielsen S.A. v. Animal Feeds Intern. Corp.,* 559 U.S. 662, 664 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control . . . . ") (quotation and citations omitted).

Under the FAA, arbitration agreements like the one at issue here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, because arbitration is a highly favored means of settling disputes, the United States Supreme Court has held "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Indeed, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion,* 563 U.S. at 344 (citation omitted).

Guided by the FAA, the United States Supreme Court has repeatedly held arbitration agreements are to be read liberally to effectuate their purpose. *Moses H. Cone,* 460 U.S. at 25; *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 90-

91 (2000). Indeed, the FAA requires courts to "rigorously enforce" arbitration agreements. *Perry v. Thomas,* 482 U.S. 483, 490 (1987); *Mitsubishi Motors Corp.,* 473 U.S. at 626; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985) (stating same). A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986); *see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.,* 769 F.3d 1308, 1311 (11th Cir. 2014) (reversing order denying motion to compel because it "cannot be 'said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers' this dispute"); *Solymar Investments, Ltd. v. Banco Santander S.A.,* 672 F.3d 981, 989 (11th Cir. 2012).[1]

In applying the foregoing principles, the United States Supreme Court has held that the FAA applies to agreements to arbitrate statutory employment-related claims. In the employment context, the Supreme Court reiterated the strong public policy in favor of arbitration:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context . . . . The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without

---

[1] Although the FAA applies to Malwarebytes Arbitration Agreement, it is worth noting that Florida also has a strong public policy favoring the enforcement of arbitration agreements as an alternative to litigation. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999); *Gren v. Gren*, 133 So. 3d 1066 (Fla. 4th DCA 2014); *see also* Fla. Stat. § 682.03.

>contravening the policies of congressional enactments giving employees special protection against discrimination prohibited by federal law . . . .

*Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123 (2001); *accord Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA claim was subject to compulsory arbitration). The Eleventh Circuit has specifically noted that "compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." *Caley,* 428 F.3d. at 1367 (citing *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1312 (11th Cir. 2002)). Plaintiff alleges that she was employed in Florida as a Global Recruiting Director. Plaintiff further alleges that her employment involved interactions with human resource supervisors in California. Accordingly, from the face of the Complaint, Plaintiff's employment implicates interstate commerce, and falls under the purview of the FAA.

    C.    **The Parties' Agreement is Valid and Enforceable.**

In order to compel a matter into arbitration, a court need only engage in a limited review to determine (1) whether a valid agreement to arbitrate exists; (2) whether an arbitral issue exists; and (3) whether the right to arbitrate has been waived. *See Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 636 (Fla. 1999); *Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275 (Fla. 5th DCA 2020); *AMS Staff*

*Leasing, Inc. v. Taylor*, 158 So. 3d 682, 686 (Fla. 4th DCA 2015); *Audio Visual Innovations, Inc. v. Spiessbach*, 119 So. 3d 522, 525 (Fla. 2nd DCA 2013). A court must grant a motion to compel arbitration if a valid arbitration clause exists encompassing the parties' dispute. 9 U.S.C. § 4; *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985).

1. **The Arbitration Agreement Delegates The Gateway Issues To The Arbitrator**

Before reaching these gateway issues, however, the Court must examine the underlying agreement to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). If so, under *Rent-A-Center*, the arbitrator must address the threshold question of arbitrability. *See JPay, Inc. v. Kobel,* 904 F.3d 923 (11th Cir. 2018) (holding "[t]he district court lacked the power to decide whether or not the parties would arbitrate on a class basis" due to the inclusion of a clear and unmistakable delegation provision); *Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1273 (11th Cir. 2017) ("In the face of the parties' agreement to arbitrate gateway issues concerning the interpretation, applicability, enforceability, and

formation of the arbitration agreement at issue, the district court was not free to pass judgment on the wisdom or efficacy of the provision in the first instance and should have compelled arbitration.").

Here, the Agreement incorporates by reference the AAA's Rules, stating the dispute will be arbitrated by one arbitrator in accordance with the rules of the AAA. Rule 6(a) of the AAA Rules provides: "<u>The arbitrator shall have the power to rule on his or her own jurisdiction</u>, including any objections with respect to the <u>existence</u>, <u>scope</u> or <u>validity</u> of the arbitration agreement."  *See* AAA Employment Arbitration Rules and Mediation Procedures ("Ex. 2") at ¶ 6(a) (emphasis added). A significant majority of courts have held incorporation of an organization's rules into an arbitration agreement constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator. *See Terminix Int'l Co. v. Palmer Ranch, LP,* 432 F.3d 1327, 1332 (11th Cir. 2005); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (observing that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221

So. 3d 1278, 1280 (Fla. 5th DCA 2017). Consequently, there can be no question any challenge to the existence, scope, validity, enforceability or breach of the Agreement must be referred to arbitration and left for the arbitrator to decide.

Here, the Parties' agreement, as well as the incorporation of AAA's Rules into the Agreement, mandate all questions regarding arbitrability, including existence, scope and validity of the agreement to arbitrate must be submitted to arbitration.

### 2. The Gateway Issues Have Been Satisfied

Because all issues of enforceability and arbitrability are committed to arbitration, any challenges to the Agreement are reserved for arbitration. However, even if the Court were to evaluate the enforceability and interpretation of the Agreement, the outcome is the same: Plaintiff must arbitrate. Therefore, Malwarebytes's motion is due to be granted, and Plaintiff's claims should be compelled to arbitration.

#### a. The Parties Entered Into a Valid Agreement to Arbitrate

State law principles governing the formation of contracts apply when evaluating the validity of an arbitration agreement. *Solymar*, 672 F.3d at 991, *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995)); *see also Perera v. H&R Block Eastern Enterprises, Inc.,* 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012); *Cedeno v. Morgan Stanley Smith Barney, LLC*, 2016 WL 75436,

\*6 (S.D. Fla. Jan. 6, 2016).  Under Florida law, a valid enforceable contract exists if a party can demonstrate "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained."  *Land Co. of Osceola County, LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015) (citing *West Constr., Inc. v. Florida Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012), *rev. denied*, 115 So. 3d 999 (Fla. 2013)); *see generally St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *Kolodziej v. Mason*, 774 F.3d 736, 740-741 (11th Cir. 2014).

There is no question of offer and acceptance here.  Malwarebytes made an offer to enter into an agreement to arbitrate in its offer letter. Plaintiff accepted the offer letter by signing the same. The Agreement is adequately supported by consideration. There is consideration in the agreement's mutual promise to arbitrate. *See e.g. Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same")*; see also Vanwechel v. Regions Bank*, No. 8:17-cv-738-T-23AAS, 2017 U.S. Dist. LEXIS 67127, at \*3 (M.D. Fla. May 3, 2017). Accordingly, there is adequate consideration here. Furthermore, the Agreement contains definite terms sufficient to be enforced. Accordingly, Malwarebyte's Agreement is a valid contract under Florida law.

  **b. <u>Plaintiff's Claims Are Within the Scope of the Arbitration Policy</u>**

"[T]he determination of whether an arbitration clause requires arbitration of a particular dispute necessarily 'rests on the intent of the parties.'" *Seifert,* 750 So. 2d at 636 (quoting *Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1342, 1348 (11th Cir. 1982)). Here, the clear intent of the parties was to require any and all claims arising out of an employee's employment with Malwarebytes, or the termination of that employment, to be submitted to arbitration, including statutory claims. The Agreement specifically applies to the claims at issue here as it covers "any other employment dispute" between Malwarebytes and Plaintiff. Exhibit 1. Thus, Plaintiff's whistleblower claim falls squarely within the terms of the Agreement and is subject to arbitration.

### c. Malwarebytes Has Not Waived The Right To Arbitrate

Finally, Malwarebytes has not engaged in any conduct that would constitute a waiver of its right to compel arbitration under the Agreement. Courts generally apply a two part test in determining whether a party has waived their right to arbitration, whether under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, whether, by doing so, that party has in some way prejudiced the other party. *Ivax Corp. v. B. Braun of Am.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002). The party asserting waiver bears a heavy burden of proof. *Grigsby & Assocs. v. M Sec. Inv.*, 635 F. App'x 728, 731 (11th Cir. 2015). ("Although delay is undoubtedly a factor to be considered, in our precedent where

waiver was found, the delay was always coupled with other substantial conduct inconsistent with an intent to arbitrate.")

"The determination of whether there has been a waiver does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the moving party." *AMS Staff Leasing*, 158 So.3d at 686 (internal citation omitted). "Additionally, the length of the delay, standing alone, is not sufficient to establish waiver." *Kendus v. Uspack Servs. Llc & Us Pack Med LLC*, No. 6:20-cv-432-Orl-78DCI, 2020 U.S. Dist. LEXIS 253842, at *8 (M.D. Fla. Apr. 13, 2020) (no waiver when there was an 8-month delay in moving for arbitration). *See also Spinner v. Credit One Bank, N.A.*, No. 6:17-cv-340-Orl-37TBS, 2017 U.S. Dist. LEXIS 213172, at *6 (M.D. Fla. Dec. 29, 2017) (answer and six month delay in moving to compel arbitration was not waiver).

Here, Malwarebytes took no action inconsistent with its right to arbitrate Plaintiff's claims. Rather Malwarebyte's filed this motion promptly upon the removal of the matter to federal court.

### D. Plaintiff's Complaint Should Be Stayed because her Claims are Arbitrable

The FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, Because all of the claims asserted in Plaintiff's Complaint are subject to arbitration, this

action should now be stayed while Plaintiff's claims are compelled to arbitration.

## IV. CONCLUSION

Based on the foregoing, Malwarebytes respectfully requests the Court enter an Order staying this case and compelling arbitration in accordance with the Parties' agreement to arbitrate.

## V. 3.01(G) CERTIFICATION

Undersigned counsel certifies that he has conferred in good faith with counsel for Plaintiff regarding the relief sought in this motion. Plaintiff does not oppose the motion.

Dated this 18 day of May, 2023.    Respectfully submitted,

/s/ *West Holden*
Kimberly J. Doud
Florida Bar # 523771
Email: kdoud@littler.com
West Holden
Florida Bar #113569
Email: wholden@littler.com

LITTLER MENDELSON P.C.
111 North Orange Avenue
Suite 1750
Orlando, FL  32801.2366
Telephone: 407.393.2900
Facsimile:  407.386.9081

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 18th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel of record.

                                        */s/ West A. Holden*
                                        West A. Holden